## In Re: Jerry Bonner's Inc., t/a Alice A's

*Thomas F. Kilroe,* for the Commonwealth.
*John S. Fine, Jr.,* for the appellant.

BROMINSKI, *J.*, March 20, 1984 — This matter comes before the court upon appeal of Jerry Bonner's, Inc., t/a Alice A's, from the assessment of a fine of ($500) for an alleged violation.

The alleged violation is as follows:

"The licensee, their servants, agents or employees, sold, furnished and/or gave or permitted such sale, furnishing and/or giving of alcoholic beverages to a minor on April 13, 1983." (Liquor Code §4-493(1)).

At the hearing conducted on March 1, 1984, it was agreed by and between the parties and their counsel, that the notes of testimony taken at the hearing conducted by the Pennsylvania Liquor Control Board on August 21, 1983, would be controlling.

That testimony reveals that the Commonwealth's first witness was Edward J. Meade, an enforcement officer for the Pennsylvania Liquor Control Board, and in that capacity he investigated the subject premises on April 13, 1983 and Mr. Bonner was sent notice of the violation on April 16, 1983. On said date he and Officer Sorokach entered the premises at 9:55 p.m. There was one doorman, John Bonner, who is the Secretary-Treasurer of the corporation and also, Frank Bonner, the President and Manager. That there was one bartender, James Lenahan and one waitress, Angie Kane. There were approximately (40) patrons in the premises. They observed that Frank Bonner walked to the rear of the establishment, and back in that area we noticed a few tables with patrons that possibly could be under age. That Mr. Bonner was in that area and he believed either talking to them or carding them and so the witness and Mr. Sorokach went back there immediately and identified themselves. An open inspection revealed that there was one minor, John

Daniel Smith, aged 19. He was observed drinking a glass of beer. That Officer Meade filled out a patron questionnaire on him and a non-traffic citation was issued. There was a minor ID card filed with approximately 100 cards but none on this individual. We showed him to Mr. Bonner as we were going out the door and Frank Bonnner gave them their cover charge back and they left at 10:20 p.m.

On cross-examination he testified that his investigation determined one minor on the premises. That upon questioning by the Agent, the minor told him he showed Mr. Bonner a pictured driver's license. That he admitted that he was asked for identification at the door.

John Daniel Smith was the next witness, who was reminded by the Examiner that he was at the hearing because there is an allegation that you were consuming alcoholic beverage at Alice A's. That a citation was issued against him and that he paid a fine as a result of a guilty plea.

The witness testified that his date of birth was July 18, 1963. That while at Alice A's on April 13, 1983, he had draft beer. That he was asked for identification when he walked in and that he was carded by another man, but Mr. Bonner was there. That he showed them a Pennsylvania pictured driver's license. That he found the card two weeks previously and the driver's license indicated he was 21 years of age.

On cross-examination he testified that this was the first time he had visited Alice A's. That when he walked in the door he was asked as to his age. That he went with two friends who were 21 years of age and they were in front of him and they were carded too. That when the Agent came to his table, he did not show them the card that he showed to Mr. Bonner, because as soon as he went in, he went to

the bathroom and flushed it down the toilet. He showed the agent his license. The agent took him into the kitchen and he signed some forms admitting he was not 21.

The Commonwealth then rested.

Mr. Frank Bonner was then called on behalf of appellant. He testified that he is the President of the subject premises and he runs it with his brother, John, the Secretary-Treasurer. That on April 13, 1983 they were working at the licensed premises. That he was standing at the door, as usual, and with the special function of carding everyone who comes in the door. That there was a special occasion that night, a beer bash, which means that once they get through the door, they sit anywhere and the waitress brings them a pitcher of beer and the patrons dance to music. He remembers John Daniel Smith coming in, that he was with Leo Kastreva, who he knew was 21, but he showed Mr. Bonner his ID card anyway and he said to Leo, "Is everybody over 21?" and he said "Yes", but Mr. Bonner wanted to see their ID cards and they showed them to him. Mr. Smith showed him a pictured ID card and the picture on the card resembled Mr. Smith. That he had a flashlight there and compared the picture to Mr. Smith. He saw Mr. Smith subsequently when he went to the back of the premises to see if the door was closed, because he once had trouble because someone unlocked the door. You can't lock it because it is a fire door. He saw the Agent carding people, but he didn't think he was going to find anyone under the age of 21. He was in the kitchen when the Agent had Mr. Smith in there signing the questionnaire. That Mr. Smith subsequently said to Mr. Bonner, "I'm sorry it happened".

## DISCUSSION

We have here no discrepancy on the facts. The Licensee relied on Pennsylvania pictured driver's license presented to him by a minor, John Daniel Smith, for admittance to the licensed premises. The card represented that Mr. Smith was 21 years of age and the picture on the license resembled him. In addition, one of the persons accompanying Mr. Smith, Leo Kastreva, who Mr. Bonner knew, vouched that Mr. Smith was 21.

The issue here is an interpretation of Section 495 of the Liquor Act, 47 P.S. §4-495. The pertinent provisions of that Section to the facts at hand are as follows:

"(a.1) The photo drivers' license or identification card issued by the Department of Transportation shall, for the purpose of this act, be accepted as an identification card.

(a.2) For the purpose of this section, the term identification card means a card which complies with either subsection (A) or (A.1) . . . .

(c) In addition to the presentation of such identification card, the agent of the State Liquor Store or the licensee or his servant, agent or employe, shall require the person whose age may be in question to fill in and sign a card in the following form:

.................................... 19.....

I, ..........................................., hereby represent to .................................................... a State Store or licensee of the Pennsylvania Liquor Control Board, that I am of full age and discretion and over the age of 21 years, having been born on ..............
19..... at ...............

This statement is made to induce said store or licensee above named to sell or otherwise furnish alcoholic beverages to the undersigned.

Serial Number of Identification Card:
I understand that I am subject to a fine of $300.00 and sixty days imprisonment for any misrepresentation herein.

...........................................
(Name)

...........................................
(Address)

Witness:

Name ...............................................................

Address ..........................................................

(e) The signed statement in the possession of a licensee or an employe of a State Liquor Store may be offered as a defense in all civil and criminal prosecutions for serving a minor, and no penalty shall be imposed if the Liquor Control Board or the courts are satisfied that the licensee or State Liquor Store employe acted in good faith."

The position of the Appellant is he complied with Section 495(a.1) and, in addition thereto, the licensee relied on Mr. Smith's associate, Mr. Kastreva, whom he knew, to verify Mr. Smith's age.

The Commonwealth's position is that not only must the licensee be shown the photo driver's license (a.1), but in addition thereto, when a person's age is in question, he must have him fill in and sign the card as required in Sec. (a.2)(c). The case of Commonwealth v. John E. Schiaffo, t/a AAA Beer Store, No. 2206 C.D. 1981, filed by The Commonwealth Court on February 24, 1983, answers the question before us. The facts in that case involve purchase of beer by a minor and the licensee testified at the hearing.

". . . that he had questioned Mr. Davies concerning the latter's age and had been furnished a driver's license, a voter registration card and a union

card, all bearing the same name and stating that the named individual was of legal age. The licensee also testified that he had asked Mr. Davies to sign his name in the licensee's presence so that the signatures could be compared, and that the minor satisfied this test. The trial court, believing that the licensee's behavior evidenced good faith, vacated the penalty imposed. The LCB appealed to this Court."

Upon Appeal, the Commonwealth Court said:

"The LCB argues here that the trial court erred as a matter of law in that the licensee did not follow the procedures of Section 495 of the Code, 47 P.S. §4-495. That provision requires, in situations where a purchaser's age is called into question, that the licensee see the purchaser's LCB identification card or a driver's license with a photograph, that the purchaser sign a statement representing that he or she is of legal age and that the licensee retain the signed statement so that it may be used in the licensee's defense. Here it is clear that the licensee did not require the signing of the statutory statement, and therefore, was unable to present such in his defense.

Although Section 495(c) of the Code, 47 P.S. §4-495(e) states that 'no penalty shall be imposed if . . . the courts are satisfied that the licensee . . . acted in good faith', the courts of this Commonwealth have clearly held that the only defense to Section 493 is compliance with all of the statutory requirements of Section 495. LaVerne's Lounge Liquor License Case, 31 Pa. Commw. 638, 377 A.2d 1040 (1977). And the execution of an identification statement is clearly a statutory prerequisite for the granting of absolution by the courts under Section 495(e). Clem's Cafe Liquor License Case, 425 Pa. 94, 227 A.2d 491 (1967). Without compliance with the statutory requirements, violations of the Liquor Code

are established regardless of any extenuating circumstances. Demangone's Inn Liquor License Case, 212 Pa. Super. 308, 243 A.2d 187 (1968).

We must, therefore, reverse the court of common pleas and reinstate the LCB order."

So, therefore, even if we find as a fact that Mr. Bonner took every precaution that he thought reasonable, which we do, according to the Schiaffo case, supra, he did not act in accordance with the Pennsylvania Liquor Code, and therefore the court must dismiss the appeal.

Accordingly, we enter the following

## ORDER

It is hereby ordered, adjudged and decreed that the Appeal of Jerry Bonner's, Inc., t/a Alice A's, is denied and dismissed.